IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M.F., a minor,                                     )
individually and as heir-at-law of                )
ELIZABETH A. FROST, deceased,                     )
through his Co-Conservators                       )
JULIE FORST and                                   )
SARAH BAYLESS,                                    )
                                                  )
and                                               )
                                                  )
CHARLES E. FROST, JR.,                            )
As Administrator of the Estate                    )
Of ELIZABETH FROST,                               )
                                                  )
                    Plaintiffs,                   )
                                                  )
v.                                                )      Case No.
                                                  )
ADT, INC., f/k/a                                  )
PROTECTION ONE, INC.,                             )      ***Jury Trial Demand***
                                                  )
SERVE:                                            )
                                                  )
ADT, INC., f/k/a                                  )
PROTECTION ONE, INC.                              )
c/o THE CORPORATION COMPANY                       )
112 SW 7th Street, Suite 3C                       )
Topeka, KS 66603                                  )
                    Defendant.                    )

## PLAINTIFFS' COMPLAINT

Plaintiffs M.F. a minor (minor plaintiff), by and through his Co-Conservators Julie Forst and Sarah Bayless, individually and as sole heir-at-law to decedent Elizabeth A. Frost (decedent), and Charles E. Frost, as Administrator of the Estate of Elizabeth Frost (plaintiff administrator), for their claims and causes of action against defendant, state and allege as follows:

1

## Parties, Jurisdiction and Venue

1.      Plaintiff M.F., a minor, is the sole lawful and legitimate child of decedent. Plaintiff resides in Topeka, Kansas.   Plaintiff and the co-conservators are citizens of Kansas.

2.      Co-conservators over plaintiff have the power and authority to prosecute this action in his name, pursuant to K.S.A. § 59-3078.

3.      K.S.A. § 59–506 provides in pertinent part that if a decedent leaves a child and no spouse, all the decedent's property shall pass to the child.

4.      Decedent was a citizen of Kansas, residing at 3420 SE Indiana Ave., Topeka, Kansas, 66605.  Decedent was unmarried at the time of her death.

5.      Plaintiff administrator was appointed by the Third Judicial District Court of Kansas, on February 2, 2017, in the county of residence of decedent at the time of her death, to serve as administrator to decedent's estate.

6.      Defendant ADT, Inc., f/k/a Protection One Inc., is a for-profit corporation organized and existing under the laws of the State of Delaware and may be served with process by serving its registered agent as set forth above.  Defendant maintains its corporate head office and nerve center at 1501 Yamato Rd., Boca Raton, Florida, 33431.

7.      Protection One, Inc., and Protection One Alarm Monitoring, Inc. merged into ADT, LLC (now Defendant ADT, Inc.) on April 13, 2017.  Protection One was the supplier of both home security system and subsequent monitoring services to the residence located at 3420 SE Indiana Ave., Topeka, Kansas, 66605, when the subject house fire occurred.

8.      Defendant transacts business in Kansas on a continuous basis, uses real estate through its providers in Kansas, creates and enforces contracts in Kansas, and has committed a

tortious act in Kansas.   Personal jurisdiction is appropriate under K.S.A. § 60–308(b).   This Court has consent, general and specific personal jurisdiction over defendant.

9.      Defendant's sufficient contacts with the forum render assertion of personal jurisdiction appropriate because they are continuous and systematic, and defendant has purposefully availed itself of the jurisdiction, invoking benefits and protections of its laws. Defendant has a registered agent in Kansas, is registered to do business in Kansas, regularly transacts business in Kansas, uses property for its agents in Kansas, and maintains agents and agencies in Kansas through its providers.   These contacts give rise to this cause of action.

10.      This action arises out of a house fire that occurred at 3420 SE Indiana Ave., Topeka, Kansas, 66605.

11.      On August 15, 2016, as a result of the house fire, decedent received catastrophic injuries including fatal carbon monoxide poisoning from the inhalation of smoke and soot.   After emergency responders removed her from the house, decedent was transported to Stormont Vail Health Care in Topeka, Kansas, where she died the same day due to her injuries.

12.      The amount in controversy exceeds $75,000 exclusive of interests or costs.

13.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Kansas.

14.      To the extent defendant contends that any claim in this case for damages is subject to the cap contained in K.S.A § 60-19a02, which plaintiffs expressly deny, then the cap in K.S.A § 60-19a02 is unconstitutional in this non-medical malpractice case in any and all of the following respects:

a.   It violates the right to jury trial under Section 5 of the Kansas Constitution Bill of Rights by, inter alia, supplanting the role of the jury to determine and assess damages;

b.   It violates the right to remedy by due course of the law under Section 118 of the Kansas Constitution Bill of Rights by, inter alia,

  i.   Arbitrarily limiting any recovery of non-economic damages to a cap of $250,000 to $350,000, irrespective of the nature, severity, extent and duration of the injuries; and

  ii.   Failing to contain a meaningful escalator clause or similar language, this diluting a substantive remedy

c.   It violates the equal protection provision of Section 1 of the Kansas Constitution Bill of Rights by, inter alia,

  i.   Disparately impacting children, women, the elderly, minority groups, the unemployed and/or victims seriously injured by tortfeasors; and

  ii.   Treating victims of tortfeasors differently based on the nature, severity, extent and duration of the injuries and further, whether a jury awards them more or less than $250,000 or $350,000 in non-economic damages; and/or

d.   It violates the doctrine of separation of powers because it abolishes the judiciary's authority to order new trials if the jury's award is inadequate, and because it is an inflexible cap that robs judges of their judicial discretion by

functioning as a statutory remitter effectively usurping the court's inherent, exclusive, and constitutionally protected power to grant remittiturs.

## Facts Common to All Counts

15.     Sometime during the early hours of August 15, 2016, an accidental home fire began at decedent's residence.

16.     Decedent's home was equipped with a security system sold and monitored by defendant.

17.     Defendant received a "sensor tamper" for "glass break" in the dining room at 1:30 a.m.  Defendant did not call any individual or emergency services at that time.

18.     Defendant received an "expansion module failure" at 1:32 a.m.   The expansion module is the key pad and system center located by the front door of the home.  Defendant did not call any individual or emergency services at that time.

19.     At approximately 1:43 a.m., thirteen (13) minutes after the initial sensor tamper, defendant twice attempted to call decedent but was unable to reach her.

20.     Defendant attempted to call the next call back number, that of decedent's mother, at 1:49 a.m. but was unable to reach her.  The caller identification labeled defendant's calls as an unlisted number and did not otherwise identify defendant as the caller.

21.     Between 2:01 a.m. and 2:04 a.m., just over thirty (30) minutes from the first notice, defendant again attempted to call decedent's number and the next call back number. Defendant was again unable to reach either party.

22.     Inexplicably, defendant "fully cleared" the event at approximately 2:04 a.m., even though it received a glass break notification for the dining room, and the expansion module

failure on the keypad.  At that point in time, defendant had not made contact with decedent, decedent's mother or any emergency services or first responders.

23.     City of Topeka, Public Works Department employees later noticed the house fire and dialed 911 from a cell phone.  From the available records, it appears the fire was first reported at approximately 2:52 a.m.

24.     First responders began to arrive at the scene at approximately 2:58 a.m.  A fire crew conducted a primary search and found decedent face down, unconscious, in a hallway.  The fire crew took decedent from the house and began emergency medical treatment at approximately 3:07 a.m.

25.     On information and belief, decedent was removed from the home at 3:07 a.m. Decedent was exposed to the smoke and soot generated by the fire for approximately one hour and thirty-seven minutes from the time of defendant's first notice and the time of removal.

26.     Decedent was transported to Stormont Vail Health Care in Topeka, Kansas, where she succumbed to her injuries and was pronounced dead.

27.     The cause of decedent's death was inhalation of smoke and soot from the fire. Decedent experienced significant conscious pain and suffering.

28.     The fire department investigation would later conclude that the cause of the fire was accidental and resulted from the kitchen stove.

## Count I
### Wrongful Death Action Pursuant to K.S.A. § 60-1901
### Negligence

29.     Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-28.

30.     On and before August 15, 2016, defendant owed decedent and minor plaintiff duties separate and apart from its contractual duties, including but not limited to the following:

a.   Defendant had a duty to exercise a reasonable degree of care in monitoring and properly responding to alerts from the security system at decedent's residence;

b.   Defendant affirmatively assumed duties through specific promises and representations in its promotional materials and other written materials that it would monitor and properly respond to alerts from the security system at decedent's residence.  Defendant's affirmative assumption of a security service over the residence gives rise to special duties of protection and care for which it gave affirmative assurances; and/or

c.   Defendant rendered monitoring services upon its previously installed security system for valuable consideration, which was necessary for the protection of those residents and possession and is subject to the duties described in Restatement (Second) of Torts §§ 323 and 324A.

31.   Defendant breached these duties of care by committing negligent acts and omissions including, but not limited to, the following:

a.   Failing to promptly respond to the glass break notification;

b.   Failing to promptly respond to the expansion module failure on the keypad;

c.   Failing to promptly respond to the glass break notification and the expansion module failure in their combined context which demonstrated a growing threat;

d.   Failing to contact anyone for thirteen (13) minutes after the initial notification;

e.  Failure to immediately take action when decedent failed to respond to phone calls;

f.  Using an unlisted telephone number that did not identify defendant when making calls to decedent and her mother;

g.  Failing to ever contact emergency services or first responders;

h.  Failing to call emergency services after its failure to reach decedent;

i.  Failing to call emergency services after its failure to reach the next call back number;

j.  Failing to provide any measure of security per its provided services;

k.  Failing to properly train and supervise its agents, employees and representatives on properly monitoring and responding to emergency situations like those described herein;

l.  "Fully clearing" the situation after thirty-four (34) minutes of failed call attempts;

m.  "Fully clearing" the situation after thirty-four (34) minutes of escalating notifications;

n.  "Fully clearing" the situation after thirty-four (34) minutes neglecting to call emergency services; and/or

o.  Ignoring the vital importance of early response in home security monitoring.

32.  Defendant's negligence delayed decedent's rescue for approximately one hour and thirty-seven minutes – from the time of defendant's first notice to the time of her removal.

33.     Defendant's negligence directly and/or indirectly caused decedent profound conscious pain and suffering as well as decedent's death.

34.     Defendant's negligent acts and/or omissions were carried on with a wanton and conscious disregard for the rights and safety of decedent as well as those other clients of defendant similarly situated to decedent.

35.     As a direct and proximate result of defendant's negligent act and/or omissions, decedent suffered injuries and death, and plaintiffs sustained economic and non-economic wrongful death damages, including but not limited to mental anguish, suffering, and bereavement; loss of society, companionship, and comfort; loss of parental care, attention, training, guidance, education, and protection; loss of earnings the decedent would have provided throughout plaintiff's minority; expenses for the care of the decedent caused by the injury including medical bills and related expenses; funeral expenses; and all other expenses incurred as a result of decedent's death.

WHEREFORE, plaintiffs pray for judgment against defendant on Count I of this complaint, for a fair and reasonable sum of damages, for plaintiffs' costs herein, for prejudgment interest at the statutory rate, and for such further and other relief the Court deems just and proper.

**Count II**
**Survival Action Pursuant to K.S.A. § 60-1801**
**Negligence**

36.     Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-35.

37.     On and before August 15, 2016, defendant owed decedent duties separate and apart from its contractual duties, including but not limited to:

a.   Defendant had a duty to exercise a reasonable degree of care in monitoring and properly responding to alerts from the security system at decedent's residence;

b.   Defendant affirmatively assumed through specific promises and representations in its promotional materials and other written materials that it would monitor and properly respond to alerts from the security system at decedent's residence.  and/or

c.   Defendant rendered monitoring services upon its previously installed security system for valuable consideration, which was necessary for the protection of those residents and possession and is subject to the duties described in Restatement (Second) of Torts §§ 323 and 324A.

38.   Defendant breached these duties of care by committing negligent acts and omissions including, but not limited to, the following:

a.   Failing to promptly respond to the glass break notification;

b.   Failing to promptly respond to the expansion module failure on the keypad;

c.   Failing to promptly respond to the glass break notification and the expansion module failure in their combined context;

d.   Failing to contact anyone for thirteen (13) minutes after the initial notification;

e.   Failure to immediately take action when decedent failed to respond to phone calls;

f.  Using an unlisted telephone number that did not identify defendant when making calls to decedent and her mother;

g.  Failing to ever contact emergency services or first responders;

h.  Failing to call emergency services after its failure to reach decedent;

i.  Failing to call emergency services after its failure to reach the next call back number;

j.  Failing to provide any measure of security per its provided services;

k.  Failing to properly train and supervise its agents, employees and representatives on properly monitoring and responding to emergency situations like those described herein;

l.  "Fully clearing" the situation after thirty-four (34) minutes of failed contact attempts;

m.  "Fully clearing" the situation after thirty-four (34) minutes of escalating notifications;

n.  "Fully clearing" the situation after thirty-four (34) minutes neglecting to call emergency services;

o.  Ignoring the vital importance of early response in home security monitoring;

39.  Defendant's negligence delayed the rescue of decedent for approximately one hour and thirty-seven minutes – from the time of defendant's first notice to the time of removal. This time period included the majority of decedent's inhalation of the smoke and soot which caused her death.

40.     Defendant's negligence directly and/or indirectly caused decedent to suffer severe personal injuries, including profound conscious pain and suffering and mental anguish prior to her death, and subsequent medical expenses.  The plaintiff administrator is entitled to bring this action for such damages.

41.     Defendant's negligent acts and/or omissions were carried on with a wanton and conscious disregard for the rights and safety of decedent and/or other clients of defendant similarly situated to decedent.

WHEREFORE, the plaintiff administrator prays for judgment against defendant on Count II of this complaint, for a fair and reasonable sum of damages, for plaintiffs' costs herein, for prejudgment interest at the statutory rate, and for such further and other relief the Court deems just and proper.

### Count III
**Survival Action Pursuant to K.S.A. § 60-1801**
**Fraudulent Misrepresentation/ Fraudulent Inducement / Fraud**

42.     Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-41.

43.     Defendant made statements of existing and material fact when it represented on its webpage that in the event an alarm is set off, "[a] trained employee immediately attempts to call you to notify you of the disturbance in case it is a false alarm.  If you confirm a false alarm, the employee will see if there is anything else you need before letting you hang up.  *If the employee is unable to contact you, or if you confirm that the alarm is genuine, the authorities will be notified.  A dispatch will then send police officers to your residence to evaluate the situation*."

44.     Defendant made numerous similar inducing representations including, but not limited to, the representations described below in paragraphs 58-65.

45.     These material representations and others made by defendant are such that would cause a reasonable person to attach importance in his or her determination whether to enter into and purchase the products and services of the defendant.

46.     These representations were intentionally made for the purpose of inducing another party to purchase defendant's products and services.

47.     These representations were known to be false or untrue by the defendant, or were recklessly made without knowledge concerning them.

48.     Decedent reasonably relied and acted upon the representations made when the choice of defendant's products and services were selected, purchased, installed, and the monthly payments were made for the protection of decedent and minor plaintiff.

49.     Defendant's fraud caused decedent to suffer severe personal injuries, including profound conscious pain and suffering and mental anguish prior to her death, and subsequent medical expenses.  Further, decedent was damaged by defendant's fraudulent actions and/or omissions in the amount of all funds expended for defendant's products and services, which failed her in every respect.  Plaintiff administrator is entitled to bring this action for such damages.

WHEREFORE, plaintiff administrator prays for judgment against defendant on Count III of this complaint, for a fair and reasonable sum of damages, for plaintiffs' costs herein, for prejudgment interest at the statutory rate, and for such further and other relief the Court deems just and proper.

<u>**Count IV**</u>
**Kansas Consumer Protection Act ("KCPA") Violation**
**Deceptive Act and/or Practices**

50.     Plaintiffs incorporate herein by reference the allegations contained in ¶¶ 1-49.

51.     The Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*., (KCPA) was enacted to advance the interests of consumers and protect them from suppliers who use deceptive and unconscionable practices.  K.S.A. § 50-623.

52.     The KCPA is construed liberally to promote the interests of consumers and achieve the policy goals listed above.  K.S.A. § 50-623.

53.     The KCPA prohibits any "supplier" from engaging in deceptive acts or practices in connection with "consumer transaction[s]." K.S.A. § 50-626(a).

54.     At all relevant times, decedent was a "consumer" as defined by K.S.A. § 50-624(b), as she purchased the security system and monitoring services from defendant for personal, household, and family use.

55.     At all relevant times, defendant solicited and engaged in consumer transactions in the ordinary course of business and, therefore, was a "supplier" as defined by K.S.A. § 50-624(l).

56.     By providing the security system and monitoring services for decedent each and every day leading up to and including August 15, 2016, defendant conducted "consumer transaction[s]" as defined in K.S.A. § 50-624(c).

57.     Defendant made numerous representations including, but not limited to, the representations described below in paragraphs 58-65.

58.     Defendant represented to decedent that "[t]he ability to remotely learn of possible hazards and to dispatch responders is key to how security monitoring works."

59.     Defendant represented to decedent that "Protection 1 home alarm systems will provide you with *total peace of mind*."

60.     Defendant represented to decedent that all of its residential security systems "are monitored 24/7 at our central monitoring centers, so you can rest easy in the knowledge that *we've got your back at all times*."

61.     Defendant represented to decedent that its "24/7 professional monitoring centers will address alarms immediately to *ensure that help is on the way*."

62.     Defendant represented to decedent that "Protection 1's home monitoring services ensure that you and your family always have *a watchful eye and a lightning fast response* unit on your side."

63.     Defendant represented to decedent that it "take[s] monitoring seriously and always employ[s] triple redundancy monitoring for home alarm systems."

64.     Defendant represented to decedent that "[i]n the event of an emergency, local police or fire assistance will be notified."

65.     Defendant represented to decedent that in the event an alarm is set off, "[a] trained employee immediately attempts to call you to notify you of the disturbance in case it is a false alarm.  If you confirm a false alarm, the employee will see if there is anything else you need before letting you hang up.  ***If the employee is unable to contact you, or if you confirm that the alarm is genuine, the authorities will be notified.  A dispatch will then send police officers to your residence to evaluate the situation***."

66.     Up to the date of filing of this complaint, all of the representations contained in paragraphs 58-65 remain on defendant's website, which is used to solicit consumers across the State of Kansas and across the country.

67.     Defendant committed acts prohibited by and in violation of the KCPA in that it employed deceptive and unconscionable acts and practices in connection with the consumer transactions with decedent described above by using deception, fraud, false pretense, false promises, unfair practices, misrepresentations, and misleading statements.  Those deceptive and unconscionable acts, including but not limited to the misrepresentations referenced in paragraphs 58-65, were all reasonably relied on by decedent to her ultimate detriment.

68.     Defendant committed acts prohibited by and in violation of the KCPA in that it employed deceptive acts and practice in representing that:  (a)  defendant's electronic products and their services had characteristics, uses or benefits that the do not have;  (b)  the particular standard, quality or grade of electronic products and services provided differ materially from the representation;  (c) defendant's products and services had certain benefits or characteristics when defendant knew that was false; and (d) the willful use of exaggeration, falsehood, innuendo or ambiguity as to a material fact in its oral or written representations.  Defendant further engaged in deceptive acts and practices by: (e) the willful use of exaggeration, falsehood, innuendo and/or ambiguity as to the traits, efficacy and reliability of defendant's products and services and (f) the willful concealment, suppression or omission of certain material facts pertaining to defendant's monitoring services.

69.     As a direct and proximate result of defendant's deceptive acts and/or practices in violation of the KCPA on each and every day during which defendant provided the useless monitoring service to decedent and minor plaintiff, decedent and minor plaintiff were damaged and seek a civil penalty, pursuant to K.S.A. § 50-634(a) and K.S.A. § 50-634(b) for each of defendant's acts and/or practices that violated the KCPA, as well as their reasonable attorneys' fees pursuant to K.S.A. § 50-634(e).

WHEREFORE, plaintiffs pray for judgment against defendant on Count IV of this complaint, for a finding that defendant be penalized $10,000 for every day decedent was in a contractual relationship with defendant for the useless security system, for prejudgment and post judgment interest, reasonable attorneys' fees, and other expenses incurred in this action and for such other and further relief as the Court deems just and proper.

## Count V
**Kansas Consumer Protection Act ("KCPA") Violation**
**Unconscionable Acts**

70. Plaintiffs incorporate herein the allegations contained in paragraphs 1-69.

71. The Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*, (KCPA) was enacted to advance the interests of consumers and protect them from suppliers who use deceptive and unconscionable practices.  K.S.A. § 50-623.

72. The KCPA is construed liberally to promote the interests of consumers and achieve the policy goals listed above.  K.S.A. § 50-623.

73. The KCPA prohibits any "supplier" from engaging in unconscionable acts or practices in connection with "consumer transaction[s]." K.S.A. § 50-627(a).

74. At all relevant times, decedent was a "consumer" as defined by K.S.A. § 50-624(b), as she purchased the security system and monitoring services from defendant for personal, household, and family use.

75. At all relevant times, defendant solicited and engaged in consumer transactions in the ordinary course of business and, therefore, was a "supplier" as defined by K.S.A. § 50-624(l).

76. By providing the security system and monitoring services for decedent each and every day leading up to and including August 15, 2016, defendant conducted "consumer transaction[s]" as defined in K.S.A. § 50-624(c).

77.     Defendant committed acts prohibited by and in violation of the KCPA in that it employed unconscionable acts and practice when it knew or had reason to know:  (a)  defendant took advantage of decedent's inability to understand the language of the service agreement;  (b) decedent did not receive any material benefit to the very subject of the transaction; particular standard, quality or grade of electronic products and services provided differ materially from the representation;  (c) the transaction, induced by the representations of defendant as stated above in paragraphs 58-65, was excessively one-sided in favor of the defendant given that defendant did not provide the subject service; and (d) the defendant made misleading statements of opinion as to its monitoring service, as stated above in paragraphs 58-65 and in Count IV of this complaint, which decedent was likely to and did rely upon to her detriment.  Defendant further engaged in the unconscionable act and practice of (e) excluding, modifying or attempting to limit the implied warranty of fitness for a particular purpose or any remedy provided by law for a breach of those warranties.

78.     As a direct and proximate result of defendant's deceptive acts and/or practices in violation of the KCPA on each and every day during which defendant provided the useless monitoring service to decedent and plaintiff, decedent and minor plaintiff were damaged and seek a civil penalty, pursuant to K.S.A. § 50-634(a) and K.S.A. § 50-634(b) for each of defendant's acts and/or practices that violated the KCPA, as well as their reasonable attorneys' fees pursuant to K.S.A. § 50-634(e).

WHEREFORE, plaintiffs pray for judgment against defendant on Count V of his complaint, for a finding that defendant be penalized $10,000 for every day decedent was in a contractual relationship with defendant for the useless security system, for prejudgment and post

judgment interest, reasonable attorneys' fees, and other expenses incurred in this action and for

such other and further relief as the Court deems just and proper.

<u>**Count VI**</u>
**Breach of Implied Warranty**

79.     Plaintiffs incorporate herein the allegations contained in ¶¶ 1-78.

80.     In Kansas, UCC limitation on implied warranty provisions to sales does not

preclude the application of common-law and statutory warranties to nonsale transactions outside

the ambit of the UCC.[1]

81.     In Kansas, a supplier in a consumer transaction may not exclude, modify or

otherwise attempt to limit an implied warranty of fitness for a particular purpose under the

Kansas Consumer Protection Act.  K.S.A. 50-639.

82.     At the time of sale, defendant had reason to know of the particular purpose for

which the security system was sold; namely for the purpose of monitoring for home security.

83.     Decedent relied on defendant's skill and judgment to furnish a suitable security

system for the purpose of monitoring for home security.

84.     There was an implied warranty that the security system would be fit for that

purpose.

85.     Defendant breached the implied warranty of fitness for a particular purpose

regarding the home security system and the subsequent monitoring services, when emergency

services were not contacted after a glass break and again after the expansion model failure.

Defendant further breached this warranty by using an unlisted telephone number to call decedent

and her mother that did not identify defendant as the caller.

---

[1] *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 690, 732 P.2d 1260, 1269 (1987) (Reversing summary judgment, finding that breach of implied warranty might be found against security alarm company in non-UCC installation and service agreement)

86.     Defendant's breaches of warranty directly and/or indirectly caused decedent to suffer severe personal injuries, including profound conscious pain and suffering and mental anguish prior to her death, and subsequent medical expenses.  Further, decedent and minor plaintiff were damaged as set forth above.

WHEREFORE, plaintiffs pray for judgment against defendant on Count VI of this complaint, for a fair and reasonable sum of damages, for plaintiff's costs, for prejudgment interest at the statutory rate, and for such further and other relief the Court deems just and proper.

## Count VII
### Breach of Express Warranty

87.     Plaintiffs incorporate herein the allegations contained in ¶¶ 1-86.

88.     Defendant made representations of fact or promise relating to the security system, including but not limited to the representations of defendant as stated above in paragraphs 58-65, which became a part of the basis of the bargain in the purchase of the home security system.

89.     Defendant described the home security system and/or described its functions under emergency situations, which became a part of the basis of the bargain in the purchase of the home security system.

90.     Defendant breached its express warranties regarding the home security system and the subsequent monitoring services, when emergency services were not contacted after a glass break and again after the expansion model failure.

91.     As a consequence of defendant's breach of warranty, as set forth above, directly and/or indirectly caused decedent to suffer severe personal injuries, including profound conscious pain and suffering and mental anguish prior to her death, and subsequent medical expenses.  Further, decedent and minor plaintiff were damaged as set forth above.

WHEREFORE, plaintiffs pray for judgment against defendant on Count VII of this complaint, for a fair and reasonable sum of damages, for plaintiff's costs, for prejudgment interest at the statutory rate, and for such further and other relief the Court deems just and proper.

### <u>Tolling All Statutes of Limitation</u>

Any and all potentially applicable statutes of limitations are tolled for the following reasons:

a.  The acts and omissions pled above constitute and are alleged as fraud;

b.  Defendant has concealed facts giving rise to the fraud claims by continuously representing its security systems and services as adequate and effective to achieve customers' desired results, namely Defendant continues to claim that if Defendant "*is unable to contact you [customer], or if you confirm that the alarm is genuine, the authorities will be notified.  A dispatch will then send police officers to your residence to evaluate the situation*"; and

c.  The statute of limitations is tolled for claims based in fraud when defendant conceals facts giving rise to the claim.

**PLAINTIFFS REQUEST A JURY TRIAL ON ALL ISSUES**

Respectfully Submitted,

/s/ Randall L. Rhodes

| | |
|---|---|
| Randall L. Rhodes | KS # 15811 |
| Jeffrey D. Rowe | KS # 23083 |
| Rachel N. Boden | KS # 26238 |

ROUSE FRETS GENTILE RHODES, LLC.
5250 West 116th Place, Suite 400
Leawood, Kansas 66211
(913) 387-1600
(913) 928-6739 – facsimile
rrhodes@rousefrets.com
jrowe@rousefrets.com
rboden@rousefrets.com

ATTORNEYS FOR PLAINTIFFS