# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **M.F., a minor,**<br>**Individually and as Heir-at-Law of Elizabeth A.**<br>**Frost, Deceased, through his Co-Conservators**<br>**Julie Frost and Sarah Bayless,**<br><br>**and**<br><br>**Charles E. Frost, Jr., as Administrator of**<br>**THE ESTATE OF ELIZABETH FROST,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ADT, INC., F/K/A PROTECTION ONE, INC.,**<br><br>**Defendant.** | **Case No. 2:18-CV-02360-JAR-GEB** |

## MEMORANDUM AND ORDER

Plaintiff M.F. ("Minor"), a minor, brings a claim against Defendant ADT, Inc. ("ADT") for wrongful death under K.S.A. § 60-1901.  Plaintiff Charles E. Frost, Jr., Administrator of the Estate of Elizabeth Frost ("Administrator"), brings claims against ADT for negligence and fraudulent misrepresentation.  Plaintiffs together bring claims against ADT for Kansas Consumer Protection Act ("KCPA") violations,[1] breach of implied warranty, and breach of express warranty.  Before the Court is Defendant's Motion to Dismiss (Doc. 9), brought pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant asserts that Plaintiffs' claims are time barred under the decedent's contractual agreement, and further that Plaintiffs have failed to allege facts sufficient to state a claim upon which relief can be granted.  For the reasons set forth in detail below, Defendant's motion is **granted**.

---

[1] K.S.A. § 50-623

# I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[2] and must include "enough facts to state a claim for relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[3] *Id.* at 570.

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[9] *Id.* at 678–79.

determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Finally, if the court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[12] However, the court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[13] Here, the Court will consider the contract Plaintiffs refer to in their Third Amended Counterclaim, which Defendant attaches to its motion to dismiss.[14]

## II. Factual Allegations

### A. Timeline of events

The facts of this action are tragic. Plaintiffs are M.F., a minor and sole heir-at-law to decedent Elizabeth A. Frost ("decedent"), and Charles E. Frost, Administrator of the Estate of Elizabeth Frost. Defendant is ADT, LLC ("ADT"), an alarm services company. Protection One, Inc., and Protection One Alarm Monitoring, Inc., the companies with which decedent contracted, merged with ADT on or around April 13, 2017. Protection One supplied both the home security

---

[10] *Id.* at 679.

[11] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12] Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[13] *See Alvardo v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.,* 130 F.3d at 1384–85.

[14] Doc. 10-1.

system and subsequent monitoring services to the residence of decedent, located at 3420 SE Indiana Ave., Topeka, Kansas 66205.

Sometime during the early morning hours of August 15, 2016, an accidental home fire from the kitchen stove began at decedent's residence. Decedent's home was equipped with a security system, which Defendant sold and monitored. At 1:30 a.m., Defendant received a "sensor tamper" alert for "glass break" in the dining room. Defendant did not call any individual or emergency service at that time. At 1:32 a.m., Defendant received an alert for "expansion module failure." The expansion module is the key pad and system center located by the front door of the home. Defendant did not call any individual or emergency services at that time. At approximately 1:43 a.m., Defendant twice attempted to call decedent, but was unable to reach her. At 1:49 a.m., Defendant then attempted to call the next call-back number, that of decedent's grandmother, but was also unable to reach her. The caller identification label associated with Defendant's number is an unlisted number and does not identify Defendant as the caller. Between 2:01 a.m. and 2:04 a.m., Defendant again attempted to call decedent's number and the next call-back number. Defendant was again unable to reach either party. Around 2:04 a.m., Defendant "fully cleared" the alarms.

Around 2:52 a.m., City of Topeka Public Works Department employees noticed the house fire and dialed 911 from a cell phone. First responders arrived at the scene at approximately 2:58 a.m.. A fire crew conducted a primary search and found decedent face down, unconscious, in a hallway. The fire crew took decedent from the house and began emergency medical treatment at approximately 3:07 a.m.. Decedent was transported to Stormont Vail Health Care in Topeka, KS, where she succumbed to her injuries and was pronounced dead.

Her cause of death was inhalation of smoke and soot from the fire. Decedent experienced significant conscious pain and suffering.

**B. Alleged Representations**

Plaintiffs allege that on Defendant's website are the following statements:

- The ability to remotely learn of possible hazards and to dispatch responders is key to how security monitoring works.

- Protection 1 home alarm systems will provide you with total peace of mind.

- [Security systems] are monitored 24/7 at our central monitoring centers, so you can rest easy in the knowledge that we've got your back at all times.

- 24/7 professional monitoring centers will address alarms immediately to ensure that help is on the way.

- Protection 1's home monitoring services ensure that you and your family always have a watchful eye and a lightning fast response unit on your side.

- [ADT] [t]ake[s] monitoring seriously and always employ[s] triple redundancy monitoring for home alarm systems.

- In the event of an emergency, local police or fire assistance will be notified.

- A trained employee immediately attempts to call you to notify you of the disturbance in case it is a false alarm. If you confirm a false alarm, the employee will see if there is anything else you need before letting you hang up. If the employee is unable to contact you, or if you confirm that the alarm is genuine, the authorities will be notified. A dispatch will then send police officers to your residence to evaluate the situation.

## C. Contractual Provisions

Decedent signed a contract with Defendant on March 12, 2014. On the front page of the contract is a "Financial Summary" of the services contracted for between Defendant and decedent.[15] Included services for which decedent paid a monthly service fee of $37.99 are "Monitoring," "Extended Service," and "PrimeCell." Notably not included, although available, are "Smoke Detection," "CO Detection," or "Temperature Monitoring."[16] At the bottom of the first page, above decedent's initials, in bold, capital letters, the contract states: "**IMPORTANT PROVISIONS – YOUR RESPONSIBILITY TO READ TERMS OF THIS AGREEMENT**" and "**By e-signing this Contract, you agree to all the terms and conditions, below.**"[17] The Contract reads, "Please pay special attention to the following sections:" and specifically directs attention to "**Section 6, 7, 8: WE ARE NOT AN INSURER, Limitation of Liability, Hold Harmless, which, among other things, significantly limits [ADT]'s liability to you under this Contract.**"[18]

Section 6 provides as follows:

> **We Are Not an Insurer. YOU AGREE THAT: (i) WE ARE NOT AN INSURER OF YOU, OTHER PERSONS LIVING IN, OR PRESENT AT YOUR PREMISES, OR YOUR PREMISES OR ITS CONTENTS; (ii) IT IS YOUR RESPONSIBILITY TO OBTAIN ADEQUATE INSURANCE COVERING YOU, YOUR PREMISES AND ITS CONTENTS, AND OTHER MEMBERS OF YOUR HOUSEHOLD AND OTHER AFFECTED PERSONS OR PROPERTY; (iii) OUR SERVICE FEES ARE BASED ON THE DETERRENCE AND OTHER VALUE OF THE SERVICES PROVIDED AND OUR LIMITED LIABILITY UNDER THIS CONTRACT, AND NOT THE VALUE OF**

---

[15] Doc. 10-1 at 1.

[16] *Id.*

[17] *Id.* (emphasis in original).

[18] *Id.* at 2 (emphasis in original).

**YOUR PREMISES OR ITS CONTENTS, OR THE LIKELIHOOD OR POTENTIAL EXTENT OR SEVERITY OF INJURY (INCLUDING DEATH) TO YOU OR OTHERS; AND (iv) YOUR SYSTEM AND OUR SERVICES MAY NOT ALWAYS OPERATE AS INTENDED FOR VARIOUS REASONS, INCLUDING OUR NEGLIGENCE OR OTHER FAULT.  WE CANNOT PREDICT THE POTENTIAL AMOUNT, EXTENT, OR SEVERITY OF ANY DAMAGES OR INJURIES THAT YOU OR OTHERS MAY INCUR WHICH COULD BE DUE TO THE FAILURE OF THE SYSTEM OR SERVICES TO WORK AS INTENDED.  AS SUCH (a) YOU AGREE THAT THE LIMITS ON OUR LIABILITY, WAIVERS AND INDEMNITIES, SET FORTH IN THIS CONTRACT ARE A FAIR ALLOCATION OF RISKS AND LIABILITIES BETWEEN YOU, US AND ANY AFFECTED THIRD PARTIES; (b) YOU WILL LOOK EXCLUSIVELY TO YOUR INSURER FOR FINANCIAL PROTECTION FROM SUCH RISKS AND LIABILITIES, AND (c) EXCEPT AS PROVIDED FOR IN SECTION 7 BELOW, YOU WAIVE ALL RIGHTS AND REMEDIES AGAINST US . . . THAT YOU . . . OR OTHER THIRD PARTY MAY HAVE DUE TO ANY LOSSES OR INJURIES YOU OR OTHERS INCUR.[19]**

In Paragraph 7, decedent agreed to a Limitation of Liability, which reads:

**Limitation of Liability.  YOUR EXCLUSIVE REMEDIES FOR OUR LIABILITY ARE SET FORTH IN THIS SECTION, NEITHER WE NOR ANY PERSON OR ENTITY AFFILIATED WITH US SHALL BE LIABLE FOR ANY LOSS, INJURY, OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE FAILURE OF EITHER THE SERVICES OR SYSTEM TO WORK AS INTENDED . . . IF WE OR ANY PERSON OR ENTITY AFFILIATED WITH US IS DETERMINED TO BE RESPONSIBLE FOR ANY SUCH LOSS, INJURY, OR OTHER CONSEQUENCE, YOUR CLAIM AGAINST US SHALL BE LIMITED TO THE LESSER OF (i) $300.00; OR (ii) SIX (6) TIMES THE MONTHLY SERVICE FEE.  THIS AMOUNT IS YOUR SOLE AND EXCLUSIVE REMEDY NO MATTER HOW THE LOSS, INJURY, OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, BREACH OF THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY**

---

[19] *Id.* at 3, ¶ 6 (emphasis in original).

**APPLICABLE LAW, OR OTHER FAULT. AT YOUR REQUEST, WE MAY IN OUR SOLE DISCRETION AGREE TO ASSUME ADDITIONAL LIABILITY BY SIGNING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU. YOU AGREE THAT WERE WE TO HAVE LIABILITY GREATER THAN THAT STATED ABOVE, WE WOULD NOT PROVIDE THE SERVICES. WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL, PUNITIVE, SPECULATIVE OR CONSEQUENTIAL DAMAGES.[20]**

In Paragraph 8, decedent agreed to hold Defendant harmless for any third-party claims:

**Hold Harmless. IF ANY THIRD PARTY FILES ANY CLAIM OR LEGAL ACTION AGAINST US OR ANY PERSON OR ENTITY AUTHORIZED TO ACT ON OUR BEHALF, ARISING FROM OUR SERVICES OR YOUR SYSTEM, YOU AGREE TO DEFEND AND HOLD US COMPLETELY HARMLESS FROM ANY SUCH ACTIONS, INCLUDING ALL DAMAGES, EXPENSES, COSTS, AND ATTORNEYS' FEES WE INCUR. THIS INDEMNIFICATION SHALL APPLY EVEN IF SUCH ACTIONS ARISE FROM OUR NEGLIGENCE, BREACH OF THIS CONTRACT, STRICT LIABILITY, NON-COMPLIANCE WITH ANY APPLICABLE LAW OR REGULATION, OR OTHER FAULT, SUBJECT TO OUR LIMITED LIABILITY SET FORTH ABOVE.[21]**

In Paragraph 9, decedent agreed to a one-year limitation of action:

**Legal Actions. NO CLAIM OR LEGAL ACTION EITHER OF US MAY HAVE ARISING OUT OF THIS CONTRACT, YOUR SYSTEM OR OUR SERVICES (WHETHER BASED ON CONTRACT, NEGLIGENCE, OR OTHERWISE) MAY BE BROUGHT MORE THAN ONE YEAR AFTER THE DATE THE CAUSE OF ACTION FOR SUCH CLAIM ACCRUED.[22]**

In Paragraph 10, decedent agreed to monitoring services and procedures. The contract provides:

---

[20] *Id.* at 3–4, ¶ 7 (emphasis in original).

[21] *Id.* at 3–4, ¶ 8 (emphasis in original).

[22] *Id.* at 4, ¶ 9 (emphasis in original).

When the Center receives an actionable alarm signal from your system (an "Alarm Event"), we will make reasonable efforts, consistent with local laws and our response policies, to make the appropriate notifications. These notifications may include the local emergency response provider . . . , the person designated on your Monitoring Information Schedule or the monitored premises. You acknowledge we are subject to various governmental regulations and industry standards designed to reduce false alarms . . . In the event an Alarm Event is detected, we may, in our sole discretion, endeavor to contact the Premises by telephone to verify that it is not a false alarm.[23]

The paragraph continues, "we shall attempt to notify the Premises or the first available person designated on your Monitoring Information Schedule."[24] The contract further provides that Defendant may "alter, amend, or discontinue any of our policies and procedures for alarm response," and "that any special instructions provided by you for the handling of alarm signals must be presented and agreed to by us in writing.[25]

Finally, the contract contains an integration clause:

This Contact is the entire agreement between you and us, and supersedes all previous contracts between you and us regarding alarm monitoring or similar services at the Premises. You agree that we are not bound by and you have not relied on any representation, promise, condition, inducement, or warranty, express or implied, not included in this Contract.[26]

---

[23] *Id.* at 4, ¶ 10.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 11, ¶ 22.

## III.    Discussion

### A.  Enforceability of the Contract

#### 1.    Unconscionability

Plaintiffs argue that "the service agreement is unconscionable and should not be enforced, in any way, by the court."[27]  Defendant asserts that decedent entered into a valid, enforceable contract with Defendant that bars Plaintiffs claims.  "Under Kansas law, construction of a written contract is a matter of law for the court."[28]  Kansas law permits "mentally competent parties to arrange their own contracts and fashion their own remedies where no fraud or overreaching is practiced."[29]  "Contracts freely arrived at and fairly made are favorites of the law."[30]  The Court will uphold contracts provided they are neither "illegal nor contrary to public policy, and that in the absence of fraud, mistake or duress a party who fairly and voluntarily entered into such a contract is bound thereby notwithstanding it was unwise or disadvantageous to the complaining party."[31]

Unconscionability is a doctrine under which a contract may be denied enforcement because of "procedural abuses arising out of the contract formation, or because of substantive abuses relating to the terms of the contract, such as terms which violate reasonable expectations of parties or which involve gross disparities in price."[32]  The burden of establishing

---

[27] Doc. 12 at 18.

[28] *LDCircuit, LLC v. Sprint Commc'ns Co., L.P.*, 364 F. Supp. 2d 1246, 1255 (D. Kan. 2005).

[29] *Estate of Bryant v. All Temperature Insulation, Inc.*, 916 P.2d 1294, 1298 (Kan. Ct. App. 1996) (quoting *Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc.*, 535 P.2d 419, 424 (Kan. 1975)).

[30] *Id.* (quoting *Kansas City Structural Steel Co.*, 535 P.2d at 424).

[31] *Knopke v. Ford Motors Co.*, No. 14-2225, 2014 WL 5817326, at *4 (D. Kan. Nov. 10, 2014) (quoting *Willie v. Sw. Bell Tele. Co.*, 549 P.2d 903, 905 (Kan. 1976)).

[32] *Wilson v. Mike Stevens Motors, Inc.*, 111 P.3d 1076, 1076 (Kan. Ct. App. 2005) (quoting *Remco Enters. Inc., v. Houston*, 677 P.2d 567, 572 (Kan. 1984)).

unconscionability is on the party attacking the contract.[33]  That party must show

unconscionability "at the inception of the contract rather than in the light of subsequent

events."[34]

The leading case on unconscionability in Kansas is *Willie v. Southwestern Bell Telephone*

*Co.*[35]  In *Willie*, the Kansas Supreme Court found the following factors relevant to whether a

contract was unconscionable:

> (1) The use of printed form or boilerplate contracts drawn
> skillfully by the party in the strongest economic position,
> which establish industry wide standards offered on a take it or
> leave it basis to the party in a weaker economic position; (2) a
> significant cost-price disparity or excessive price; (3) a denial
> of basic rights and remedies to a buyer of consumer goods; (4)
> the inclusion of penalty clauses; (5) the circumstances
> surrounding the execution of the contract, including its
> commercial setting, its purpose and actual effect; (6) the hiding
> of clauses which are disadvantageous to one party in a mass of
> fine print trivia or in places which are inconspicuous to the
> party signing the contract; (7) phrasing clauses in language that
> is incomprehensible to a layman or that divert his attention
> from the problems raised by them or the rights given up
> through them; (8) an overall imbalance in the obligations and
> rights imposed by the bargain; (9) exploitation of the
> underprivileged, unsophisticated, uneducated and the illiterate;
> and (10) inequality of bargaining or economic power.[36]

Further, there must be additional factors such as deceptive bargaining conduct as well as unequal

bargaining power to render the contract unconscionable.[37]

Plaintiffs argue that Defendant's adhesion service agreement contains multiple indicators

of unconscionability under *Willie*, including hiding disadvantageous clauses within masses of

---

[33] *Santana v. Olguin*, 208 P.3d 328, 332 (Kan. Ct. App. 2009).

[34] *Knopke*, 2014 WL 5817326, at *4.

[35] 549 P.2d 903 (Kan. 1976).

[36] *Id.* at 906–07 (citations omitted).

[37] *Id.* at 907.

fine print and in inconspicuous places, using unnecessary legalese, an "overall imbalance in the obligations and rights imposed by the bargain," and "clear inequality of bargaining and economic power."[38]  However, numerous courts, including Kansas courts, have rejected arguments that nearly identical exculpatory provisions are unconscionable.  In *Peter's Clothiers, Inc. v. Nat'l Guardian Sec. Servs. Corp.*, the court considered a different security company's limitation of liability clause, which was nearly identical to the clause at issue here, and reasoned,

> "[c]onsidering the small fee [the security company] received, all parties to this contract understood that [the security company] was not insuring all the merchandise located at [Plaintiff's] store.  The court concludes that the liability limiting language in the contract is not unconscionable; it avoids placing [the security company] in the position of being an insurer of [Plaintiff's] property.[39]

Indeed, courts have "repeatedly upheld limitation of liability clauses in burglar alarm service contracts against allegations that they are violative of public policy or unconscionable."[40]

Further, the language limiting liability in decedent's contract was not hidden in fine print. In *Santana v. Olguin*, the court found a limitation of liability clause conspicuous when it was "written in relatively plain language and set forth after an all-capital-and-bold heading that clearly and unequivocally signaled the importance of the release and limitation of liability language."[41]  Here, the front page of the agreement tells the contracting party to "pay special

---

[38] Doc. 12 at 17.

[39] *Peter's Clothiers, Inc. v. Nat'l Guardian Sec. Servs. Corp.*, 994 F. Supp. 1343, 1348 (D. Kan. 1998). Indeed, the provisions are nearly identical in content and in scope.  In *Peter's Clothiers, Inc.*, the provision included a statement that the security company was not an insurer, the charges were based solely on the value of the system, there was no liability even in the event of the company's negligence, failure to perform, or failure of the system or services, provided that the contracting party had the opportunity to contract for a separate amendment to increase the company's liability, and limited recovery to the lesser of fifty percent of one year's recurrent service charge or $1000.  *See also Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1265 (Kan. 1987) ("The limitation of liability clause is not contrary to public policy and the district court did not err in finding it valid as to the claims based upon negligence and strict liability and limiting Rollins' liability thereunder.").

[40] *E.H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274, 1278 (1st Cir. 1990) (collecting cases).

[41] *Santana v. Olguin*, 208 P.3d 328, 333 (Kan. Ct. App. 2009); *see also Frets v. Capitol Fed. Savings & Loan Ass'n*, 712 P.2d 1270, 1277 (1986).

attention to the following sections" including "Section 6, 7, and 8: WE ARE NOT AN INSURER, Limitation of Liability, Hold Harmless, which, among other things, significantly limits Protection One's liability to you under this Contract."[42]  The heading is written in plain English and points the contracting party to the specific provisions in the contract that limit Defendant's liability; this could hardly be considered "hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract."[43]  Beyond the front-page heading, the phrasing of the clause is comprehensible, and contrary to Plaintiffs' assertion, the contract is neither written in unnecessary legalese nor exploitative.

Finally, assuming there is "unequal bargaining and economic power" here due to the nature of the adhesion contract, Plaintiffs allege no facts to support an inference that there was deceptive bargaining conduct at the time of contracting such that the contract should be found to be unconscionable.[44]  Accordingly, the Court considers Plaintiffs' additional arguments in light of its finding that a valid, enforceable contract existed between the parties.

### 2. Gross Negligence

Plaintiffs assert that the contractual limitations of liability are unenforceable due to allegations of gross negligence.  Plaintiffs' Complaint alleges that "[d]efendant's negligent acts and/or omissions were carried on with a wanton and conscious disregard for the rights and safety of decedent and/or other clients of defendant similarly situated to decedent."[45]  Similarly,

---

[42] Doc. 10-1 at 1.

[43] *Willie*, 549 P.2d at 906–07.

[44] Plaintiff alleges, "the defendant took advantage of decedent's inability to understand the language of the service agreement."  Doc 12 at 30.  However, this conclusory statement is not supported by facts, and accordingly, is not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[45] Doc. 8 ¶¶ 34, 41.

Plaintiff's Reply states, "all of those issues are present in this case, including allegations of gross and wanton negligence." Certainly, under Kansas law, "[t]o the extent that the release attempts to limit liability for gross negligence or willful and wanton conduct, it is unenforceable."[46] "To establish wanton conduct, a plaintiff must make a two-pronged showing: (1) that the act was 'performed with a realization of the imminence of danger'; and (2) that the act was performed with 'a reckless disregard [of] or complete indifference to the probable consequences of the act.'"[47] Plaintiffs' conclusory allegations do not sufficiently allege wantonness or gross negligence. To survive a motion to dismiss, Plaintiffs must allege "enough facts to state a claim for relief that is plausible on its face."[48] Here, Plaintiffs have alleged no facts to support an inference that Defendant acted wantonly. Accordingly, the Court finds that allegations of gross negligence here do not bar enforcement of the otherwise enforceable contract.

### 3. Suit Limitation Provision

Paragraph 9 of decedent's contract with ADT reads, "no claim or legal action either of us may have arising out of this contract, your system, or our services (whether based on contract, negligence, or otherwise) may be brought more than one year after the date the cause of action for such claim accrued."[49] Defendant asserts that this provision is enforceable and bars Plaintiffs' suit.

---

[46] *Wolfgang v. Mid-Am. Motorsports, Inc.*, 898 F. Supp. 783, 788 (D. Kan. 1995).

[47] *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009) (quoting *Reeves v. Carlson,* 969 P.2d 252, 256 (Kan. 1998)).

[48] *Twombly*, 550 U.S. at 570.

[49] Doc. 10-1 ¶ 9.

Absent statutory prohibition, Kansas law permits a contracting party to limit the time of its liability under a contract.[50] Suit limitation provisions "encourage plaintiffs to use reasonable and proper diligence in enforcing their rights and protect courts from having to resolve claims years after the fact. In short, suit-limitation provisions serve a number of purposes even when the insurer is not directly prejudiced by a late filing."[51] "[U]nder Kansas law, when a contract does not violate an articulated public policy, parties may agree by contract to limit the time to file suit, even if the applicable statute of limitations allows for a greater time period."[52]

Plaintiffs assert that the provision is unenforceable because wrongful death, survival, and consumer protection claims invoke public policy concerns "of a greater magnitude" than other causes of action protected from contractual limitation by Kansas courts. Plaintiffs cite no authority in support of their contention that public policy forbids a one-year suit limitation for survival actions or consumer protection claims, and the Court declines to make new law. Further, even if a one-year contractual suit limitation is against public policy, Plaintiffs' survival and consumer protection claims are dismissed for failure to state a claim, as discussed below. The Court first considers the effect of the suit limitation provision on Minor's wrongful death claim.

---

[50] *See, e.g.*, *Coates v. Metro. Life Ins. Co.*, 515 F. Supp. 647, 650 (D. Kan.1981); *Sibley v. Sprint Nextel Corp.*, No. CIV.A. 08-2063-KHV, 2008 WL 2949564 n.7 (D. Kan. July 30, 2008) (upholding one-year limitation in a suit alleging breach of KWPA and breach of contract).

[51] *B.S.C. Holding, Inc. v. Lexington Ins. Co.*, 625 F. App'x 906, 910 (10th Cir. 2015) (internal quotations omitted); *see also Pfeifer v. Fed. Exp. Corp.*, 304 P.3d 1226, 1234 (Kan. 2013) (holding that suit limitation provision violated public policy in "circumstances in which there is a strongly held public policy interest at issue.").

[52] *Infinity Energy Res. v. St. Paul Fire & Marine Ins. Co.*, No. 12-2685-JTM, 2013 WL 3792899, at *7 (D. Kan. July 19, 2013).

### B. Minor's Wrongful Death Claim

Minor asserts that a one-year suit limitation for wrongful death claims is against Kansas public policy, and further, that Minor's minor status tolls any applicable suit limitation provision or statute of limitations. Under Kansas law, a wrongful death claim requires that the decedent "might have maintained the action had such person lived."[53] Kansas courts have not decided whether a one-year contractual suit limitation is against public policy with regard to wrongful death claims, nor have Kansas courts considered whether minority tolls a contractual suit limitation agreed to by decedent. The Court considers these issues in turn.

### 1. Contractual Limitation of Wrongful Death

When considering whether public policy limits enforcement of an otherwise enforceable contract, the Court must balance competing interests. On one hand, Kansas courts have consistently recognized "the paramount importance of the freedom to contract."[54] On the other hand, "[s]tatutes of limitation are creatures of the legislature and themselves an expression of public policy on the rights to litigate." In *Pfeifer*, the Kansas Supreme Court rejected a six-month suit limitation provision for a retaliation claim arising under the Worker's Compensation Act. Minor argues that a wrongful death claim "invoke[s] public policy concerns of a greater magnitude" than *Pfeifer* and accordingly, the court ought to find the one-year provision to be contrary to public policy.

In *Pfeifer*, the plaintiff brought a retaliatory discharge claim, alleging that her employer fired her because she collected Worker's Compensation.[55] The plaintiff's employment contract

---

[53] K.S.A. § 60-1901.

[54] *Pfeifer v. Fed. Exp. Corp.*, 304 P.3d 1226, 1230 (Kan. 2013) (citing *Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 91 (2005)).

[55] *Id.* at 1228.

included a provision which required her to file suit within six months of her termination.[56]  The Kansas Supreme Court reasoned that "Kansas has a 'thoroughly established' public policy supporting injured workers' rights to pursue remedies for their on-the-job injuries and opposing retaliation against them from exercising their rights."[57]  The court emphasized that the tort at issue "rested on a principle of deterrence against employer reprisal for an employee's exercise of a legal right" and found that the contract "weakened [the plaintiff's] right to pursue a cause of action and potentially subverts the public interest in deterring employer misconduct."[58]  Further, the court found that "restricting an employee's time to bring a retaliatory discharge claim for a job termination . . . necessarily impeded the enforcement of that right and the public policy underlying it."[59]

The *Pfeifer* court relied on *Hunter v. American Rentals* in holding that the contractual limitation would impede a legislative purpose.[60]  In *Hunter*, the Kansas Supreme Court found a contract provision eliminating liability for ineffective towing equipment was void because the contract provision directly undermined the legislative purpose of a Kansas statute that specifically required Defendant to provide safe towing equipment.[61]  The court found that public policy required the court to uphold the specific statutory duty—providing safe trailer hitches— the company owed to its customers and the general public, despite the contractual waiver.[62]

---

[56] *Id*. at 1229.

[57] *Id*. at 1232.

[58] *Id*. at 1233.

[59] *Id*. at 1234.

[60] *Hunter v. American Rentals*, 371 P.2d 131 (Kan. 1962).

[61] *Id*. at 133 ("G.S.1949, Chapter 8, Article 5 . . . § 8-5, 118 provides: a) When one vehicle is towing another the drawbar or other connection shall be of sufficient strength to pull, stop and hold all weight towed thereby . . . .  (b) In addition to the drawbar connections between any two such vehicles there shall be provided an adequate safety hitch.").

[62] *Id*.

Minor asserts that wrongful death "invoke[s] public policy concerns of a greater magnitude than the retaliatory discharge claim protected by the *Pfeifer* court," and asserts that Kansas law supports this finding.[63] Certainly the creation of the wrongful death cause of action is a matter of public policy and properly the jurisdiction of the legislature.[64] However, Minor points to no statute or policy that would be undermined by a one-year contractual limitation on the cause of action. The contractual provision at issue here provides one year from "the date the cause of action for such claim accrued" for the action to be brought.[65] Unlike in *Pfeifer*, a contractual limitation of one year does not "effectively weaken[]" Minor's rights nor does it "subvert the public interest in deterring" misconduct. Further, no specific statutory duty or legislative purpose is undermined. Indeed, Minor's assertion that the claim invokes "public policy concerns of a greater magnitude than the retaliatory discharge claim" is unavailing. It is not the magnitude of the public policy that is dispositive, but rather the specific, articulable public policy that requires abrogation of parties' freedom to contract. Accordingly, the Court finds that the one-year contractual limitation on Minor's wrongful death claim is not contrary to Kansas public policy.

---

[63] Doc. 12 at 19. Plaintiff cites *Byrd v. Wesley Med. Ctr.*, where the court reasoned that "we recognize wrongful death actions because of the great value we place on human life." *Byrd v. Wesley Med. Ctr.*, 699 P.2d 459, 468 (Kan. 1985). Notably, *Byrd* concerned the creation of a wrongful death cause of action and did not address the issues present here.

[64] *See e.g.*, *Humes v. Clinton*, 792 P.2d 1032, 1037 (Kan. 1990) ("We further believe the public policy decision to extend liability under the wrongful death act is properly left to the legislature.").

[65] Doc. 10-1 ¶ 9. Notably, accrual, and therefore the timing of the one-year suit limitation, is determined by Kansas law. K.S.A § 60-513; *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996) ("The discovery rule, as codified at K.S.A. 60-513(b) and (c), states that the limitations period starts when the "fact of injury" is "reasonably ascertainable." The phrase "reasonably ascertainable" means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the death and its wrongful causation.").

## 2.  Tolling of the Wrongful Death Claim

Minor asserts that even if the one-year provision is enforceable, under K.S.A. § 60-515, the suit limitation is tolled based on his minor status.  In *Mason v. Gerin Corp.*, the Kansas Supreme Court found that expiration of decedent's own statute of limitations prior to his death bars a wrongful death claim by his heirs.[66]  In *Mason*, the court explicitly considered and rejected a line of cases that found it was improper to "permit the action of the decedent prior to his death to defeat the cause of action in favor of his personal representative."[67]  The court declined to follow this reasoning in light of the plain language of the Kansas statute and Kansas precedent.[68] The court found the personal representative's action time-barred because "[t]he condition specified in the wrongful death statute requiring that the injured party have the capacity to maintain the action had he or she lived is not fulfilled."[69]  In *Mason*, the Court also recognized that under Kansas law, a wrongful death action could not be maintained if the "decedent's claim was satisfied by settlement during his lifetime."[70]

In *Frost v. Hardin*, the Kansas Supreme Court, adopting the opinion of the Kansas Court of Appeals, found that a wrongful death action by minor children was not barred by the statute of limitations simply because the action would be barred if brought by the widow mother.[71]  The court found that the children's minority tolled the statute of limitations in a wrongful death action, just as it would any other claim brought by a minor, because the court was unable to

---

[66] *Mason v. Gerin Corp.*, 647 P.2d 1340, 1345 (Kan. 1982).

[67] *Id*. at 1343.

[68] *Id*.

[69] *Id*. at 1345.

[70] *Id*. (citing *Goodyear, Administratrix v. Railway Co.*, 220 P. 282, 287–88 (Kan. 1923)).

[71] *Frost v. Hardin*, 571 P.2d 11, 16–17 (Kan. Ct. App. 1977), opinion adopted, 577 P.2d 1172 (Kan. 1978).

"perceive any such public policy in the Kansas statutes which would override the specific tolling provisions of 60-515(a)."[72]

Unlike *Frost*, here, the question is whether a minor child is barred by a contractual limitation that would bar suit by the decedent herself, not a statute of limitations that would bar adult heirs. A condition precedent to a claim under the Kansas wrongful death statute is that the decedent "might have maintained the action" had they lived.[73] Here, decedent could not have maintained any action brought more than one year after her death, and prior to the expiration of that year, her recovery was contractually limited to $247.94. As in *Mason*, the actions and decisions of decedent prior to her death limits the ability of her heirs to recover for wrongful death. In *Frost*, the court found that no public policy overcame K.S.A. § 60-515. Kansas courts, however, have found that Kansas public policy supports reasonable risk-allocations provisions in contracts, including suit limitation provisions that shorten the legislative statute of limitations.[74] Defendant also correctly notes that to allow Minor to escape this contractual limitation, while upholding the contract's applicability as to Administrator, would require decedent's estate to indemnify and hold Defendant harmless against Minor's wrongful death claim.[75]

Alternatively, Minor asserts that he is not barred by a contractual limitation because he is not in privity of contract. Privity of contract is "essential to the maintenance of any action on

---

[72] *Id.*

[73] *Cf. Grp. Health Ass'n, Inc. v. Gatlin*, 463 A.2d 700, 702 (D.C. 1983) (holding that because the condition precedent in the statute—bringing suit within one year—was not met, the minor children of decedent could not bring a wrongful death suit pursuant to a tolling of the statute of limitations based on their minority)

[74] *See e.g., Peter's Clothiers, Inc. v. Nat'l Guardian Sec. Servs. Corp.*, 994 F. Supp. 1343, 1348 (D. Kan. 1998); *Infinity Energy Res. v. St. Paul Fire & Marine Ins. Co.*, No. 12-2685-JTM, 2013 WL 3792899, at *7 (D. Kan. July 19, 2013).

[75] Doc. 10-1 ¶ 8.

any contract . . . in respect of the matter sued on."[76]  Here, the matter sued on is the wrongful death of decedent, who was in privity of contract.  The wrongful death claim is one the decedent "might have maintained" had the person lived.[77]  Accordingly, it is decedent's privity of contract that is required in a wrongful death suit, not Minor's.  Minor's status as a minor does not change the Court's analysis or the condition precedent.  Accordingly, the Court finds that Minor's wrongful death claim is subject to the contractual limitations, and is accordingly, time-barred.

### C.  Count II: Administrator's Negligence Claim

Administrator brings a claim for negligence under K.S.A. § 60-1801, alleging Defendant owed decedent and Minor certain duties separate and apart from its contractual duties: 1) exercising a reasonable degree of care in monitoring and responding to alerts; 2) duties affirmatively assumed through specific promises and representations in promotion materials, and 3) duties arising from the Restatement of Torts §§ 323 and 324A.[78]

Defendants argue that Administrator's negligence claims should be dismissed because "the existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract. . . .  Stated another way, tort duties may not be imposed on a party where the party's duties and rights are specifically defined by contract."[79]  When parties contemplate a remedy in the event of a breach of contract, the bargained-for existence of a contractual remedy displaces the imposition of tort duties and default consequences.[80]

---

[76] *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1231 (Kan. 2005) (quoting *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 891 (Kan. 1984)).

[77] KSA § 60-1901.

[78] Restatement (Second) of Torts § 323 (1934) (Negligent Performance of Undertaking to Render Services); Restatement (Second) of Torts § 324A (1934) (Duty of One Who Takes Charge of Another Who is Helpless).

[79] *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123, 1151–52 (D. Kan. 2002) (citing *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1145, 1461 (D. Kan. 1995)).

[80] *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 277 F. Supp. 2d 1120, 1129–30 (D. Kan. 2003).

Nevertheless, a party may be liable in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract.[81]  "[T]he key difference is whether the contract calls for a specific result."[82]  Under Kansas law, a contract and tort action may arise out of the same set of facts.[83]  "When the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies."[84]

Administrator cites *Burcham* and *Bittel* in support of his contention that he has pleaded multiple duties independent of the service contract.[85]  Unlike in *Bittel*, however, there is an enforceable contract between the parties, and distinct from *Burcham*, there are no fiduciary duties that arose separate from the alarm monitoring contract.[86]  The duties Defendant allegedly breached were Defendant's contractual duties to monitor and respond to the alarm system, which were specifically outlined in the contract; indeed, the contract called "for a specific result," namely, the procedure Defendant would follow in the event of an alarm.[87]  Further, the contract expressly disclaimed any other promises or representations apart from those specifically contracted for.

---

[81] *Id.* at 1130.

[82] *Clark v. Assocs. Comm. Corp.*, 149 F.R.D. 629, 636 (D. Kan. 1993) (quoting *Hunt v. KMG Main Hurdman*, 839 P.2d 45, syl. ¶ 4 (Kan. Ct. App. 1992)); *see also Fed. Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1042 n.10 (10th Cir. 1994); *Brady v. United States*, No. 96-1106-MLB, 1997 WL 321300, at *1 (D. Kan. Apr. 8, 1997).

[83] *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 146 (Kan. 2003); *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 497–98 (Kan. 1988); *see also Shields v. U.S. Bank Nat'l Assn. N.D.*, No. 05-2073-CM, 2005 WL 3335099, at *2 (D. Kan. Dec. 7, 2005).

[84] *Bittel*, 962 P.2d at 498.

[85] *Burcham*, 77 P.3d at 150; *Bittel* 962 P.2d at 499.

[86] *See Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16-2494-DDC-TJJ, 2017 WL 6039537, at *12 (D. Kan. Dec. 6, 2017) (distinguishing *Bittel* and *Burcham* under similar circumstances).

[87] *Id.* at 4, ¶ 10; *Clark*, 149 F.R.D. at 636.

Finally, the duties Administrator alleges arise under the Restatement—Negligent Performance of Undertaking to Render Services and Duty of One Who Takes Charge of Another Who is Helpless—are not adequately pleaded. Plaintiffs have alleged no facts to support a claim that Defendant "gratuitously render[ed] services" or "[took] charge of another who is helpless"[88] Defendant's duties toward Administrator arose specifically and exclusively from its contractual duties to monitor and respond, not Kansas common law. Accordingly, Administrator's negligence claim is dismissed.

### D. Counts III, IV, V: All Plaintiffs' Fraud and KCPA Violations Claims

Pursuant to Fed. R. Civ. P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This provision "applies to allegations of deceptive trade practices under the KCPA."[89] Thus, to survive a motion to dismiss, an allegation of deceptive practices under the KCPA "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[90] Similarly, Plaintiffs' fraud claims brought pursuant to K.S.A. § 60-1801 must meet the particularity requirement of Rule 9(b).[91] Accordingly, the Court considers all of Plaintiffs' fraud claims together.

Although Plaintiffs have pleaded with particularity the content of the statements, they have not sufficiently pleaded when the representation was made to Plaintiff. Plaintiff argues that they have satisfied the "when" requirement by pleading that "up to the date of filing of this

---

[88] Restatement (First) of Torts § 323 (1934); Restatement (First) of Torts § 324A (1934).

[89] *Thompson v. Jiffy Lube Int'l Inc.*, 505 F. Supp. 2d 907, 930 (D. Kan. 2007) (citing *In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003)).

[90] *Id.* at 930 (internal quotation marks and citations omitted).

[91] Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

complaint, all of the representations contained in paragraphs 58-65 remain on defendant's website." As this Court explained in *Jamieson*, allegations reflecting such broad time periods are not sufficiently particular for purposes of Rule 9(b).[92] Here, Plaintiffs' have alleged no facts as to when decedent saw or relied upon these representations, and accordingly, their fraud claims fail to meet the particularity requirement.

Further, Plaintiffs have failed to demonstrate they were aggrieved. In addition to pleading the when, where, what, and who of the alleged misrepresentations, a plaintiff bringing a KCPA claim must allege she is an "aggrieved consumer," that is, she "suffered some 'loss or injury' as a result of the violation."[93] In *Finstad v. Washburn University of Topeka*, students in Washburn University's paralegal program alleged a KCPA violation based on misrepresentations in the University's course catalog advertising the program as accredited, when in fact it was not.[94] The district court granted the University's motion for summary judgment because the students had not demonstrated a causal link between the University's false statement and the injuries the students suffered as a result of their enrollment in the program.[95] In upholding the district court's finding, the Kansas Supreme Court clarified that the KCPA incorporates a causation requirement based on the requirement that a plaintiff bringing a private cause of action under the Act suffer some loss or injury "as a result of the violation" of the Act.[96] Because the

---

[92] *Jamieson v. Vatteron Educational Ctr., Inc.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007).

[93] *Caputo v. Prof'l Recovery Servs., Inc.*, 261 F. Supp. 2d 1249, 1261 (D. Kan. 2003) (citing *Finstad v. Washburn Univ.*, 845 P.2d 685 (Kan. 1993)).

[94] 845 P.2d at 692.

[95] *Id.* at 688.

[96] *Id.* at 692.

students did not rely on the false statement, they could not establish that they were "aggrieved" by a KCPA violation.[97]  The court further explained that

> many, if not all, of the students were unaware of the statement. Many enrolled prior to the publication of the statement in the university catalogue.  Nor is there any showing that any of the students suffered injury or loss as a result of the publication of the statement.  The students enrolled and paid the tuition.  By so doing, they were consumers under the KCPA; however, the Act requires more in that they must also be aggrieved by the violation.[98]

Similarly, the Court finds here that Plaintiffs have failed to allege plausible facts that decedent was an "aggrieved" consumer within the meaning of the KCPA.  Plaintiffs have alleged no facts to show that decedent was aware of the statements on the website or that she relied upon them.  Thus, the Court finds that Plaintiffs have failed to plead the element of causation required to plausibly allege that decedent was an "aggrieved consumer" under the KCPA.

Because Plaintiffs have not pleaded the elements of their fraud claims with particularity, and because they have not presented plausible allegations that decedent was "aggrieved" by Defendant's alleged violation of the KCPA, the Court dismisses Plaintiffs' fraud and KCPA claims.  Plaintiffs request that the Court grant them leave to amend the Complaint to plead their claims with particularity in the event the Court finds their allegations insufficient to state a fraud claim.  D. Kan. Rule 15.1 requires that a party moving for leave to amend attach a proposed pleading so that the Court can determine whether leave to amend is appropriate.[99]  "This Court does not routinely grant leave to amend a motion to dismiss in the absence of a motion for leave to amend, or at least some representation that there are additional facts that may cure the

---

[97] *Id.* at 691.

[98] *Id.*

[99] D. Kan. Rule 15.1.

deficiency."[100]  Plaintiffs provide neither a proposed pleading nor any indication that they can present additional facts to cure the deficiencies the Court has identified above.  Accordingly, Plaintiffs are denied leave to amend, and their fraud and KCPA claims are dismissed.

### E.  Counts VI and VII: All Plaintiffs' Warranty Claims

Finally, the court considers whether Plaintiffs' have sufficiently alleged express and implied warranty claims.

#### 1.      Express Warranty

Plaintiffs assert that Defendant made "representations of fact or promise relating to the security system, including but not limited to" the representations found on Defendant's website, and that these representations became part of the basis of the bargain.[101]

"Despite the general rule that express warranties, once made, may not be disclaimed, courts will uphold disclaimers if the parties clearly intended to finalize their agreement in one writing."[102]  Here, the contract between decedent and Defendant includes an explicit integration clause, which disclaims an representations, promises, or express or implied warranties.[103] Kansas courts have routinely dismissed claims for express warranty under similar circumstances when a party has disclaimed warranties in a written contract.[104]  Accordingly, the Court finds that Plaintiffs' express warranty claims are subject to dismissal.

---

[100]*McCoy v. City of Independence, Kan.*, No. 12-1211-JAR-JPO, 2013 WL 424858, at *1 n.3 (D. Kan. Feb. 4, 2013).

[101] Doc. 8 ¶ 88.

[102] *Ray Martin Painting, Inc. v. Ameron, Inc.*, 638 F. Supp. 768, 774 (D. Kan. 1986).

[103] Doc. 10-2 ¶ 22.

[104] *See Moore v. Climate Corp.*, No. 15-4916-DDC-KGS, 2016 WL 4527991, at *7 (D. Kan. Aug. 30, 2016) (collecting cases).

### 2. Implied Warranty

Plaintiffs assert an implied warranty of fitness for a particular purpose and argue that under KSA § 50-639, a supplier may not exclude, modify, or otherwise limit this warranty. Defendant argues 1) this limitation is not applicable because this was a contract for services, not goods, and alternatively, 2) no implied warranty of fitness for a particular purpose existed because the goods were acquired for the ordinary purpose for which such goods are generally used.

Implied statutory or common-law warranties can exist outside of the ambit of the UCC.[105] However, K.S.A. § 50-639 applies "*only* where the subject of the consumer transaction is property and not services."[106]  K.S.A. § 50-624(j) defines property as "real estate, goods and intangible personal property."[107]  In the Third Amended Complaint, Plaintiffs allege,

> Defendant breached the implied warranty of fitness for a particular purpose regarding the home security system and the subsequent monitoring services, when emergency services were not contacted after a glass break and again after the expansion model failure. Defendant further breached this warranty by using an unlisted telephone number to call decedent and her grandmother that did not identify defendant as caller.[108]

Plaintiffs assert that they have pleaded claims based on goods because their allegations stem from failure of "defendant's integrated security system . . . which is connected to the defendant's call center and its systems" and the "system failed because it dialed a call-back number using an unlisted number."[109]

---

[105] *Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1269 (Kan. 1987).

[106] *Moler v. Melzer*, 942 P.2d 643, 645 (Kan. Ct. App. 1997) (emphasis in original).

[107] K.S.A. § 50-624(k)(3).

[108] Doc. 8 ¶ 85.

[109] Doc. 12 at 31.

In *Franklin v. Northwest Drilling Co.*, the defendant equipped the plaintiff's well with a pump and motor and the contract between the parties included both an agreement for services and the cost of the equipment.[110]  The Court found that in "the absence of an express provision guaranteeing the results of a well drilling contract there is no implied warranty on the part of a driller" as to the *services* portion of the contract.[111]  Accordingly, the mere fact that a good was contracted for is not dispositive.

Plaintiffs cite *Corral v. Rollins Protective Services Co.* in support of their contention that an implied warranty exists for alarm systems under K.S.A. § 50-639.  However, the Court finds the present case distinguishable.  In *Corral*, the plaintiff alleged that "the alarm system failed to function," namely, that the *good* failed to function as warranted.  Here, Plaintiffs do not allege that the good failed to function; rather, they allege that the service portion of the contract was not upheld, namely, that despite receiving a "sensor tamper" and "expansion module failure," the "defendant did not call any individual or emergency services."[112]  Similarly, Plaintiffs' allegation that the telephone number was unlisted pertains to the same service: Defendant's response to the alarm activation.

Even if the Court found that the warranty applied based on a sale of "property," Plaintiffs have failed to adequately plead an implied warranty of fitness for a particular purpose.  An implied warranty of fitness for a particular purpose exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that

---

[110] *Franklin v. Nw. Drilling Co.*, 524 P.2d 1194, 1200–01 (Kan. 1974).

[111] *Id.* at 1202. Other courts have found contracts that include both an installation of goods and subsequent services to be service contracts. *See Higgins v. Lauritzen*, 530 N.W.2d 171, 173 (Mich. Ct. App. 1995) (collecting cases).

[112] Doc. 8, ¶¶ 17, 18.

the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."[113]

Whether or not an implied warranty of fitness for a particular purpose arises in any individual case is a question of fact to be determined by the circumstances of the contracting.[114]

A defining characteristic of the implied warranty of fitness for a particular purpose is that the goods contracted for are used for a particular, rather than ordinary, purpose.[115]  The warranty of fitness for a particular purpose is frequently confused with the implied warranty of merchantability, which covers fitness for ordinary purposes.[116]  But "[t]he warranty of fitness for a particular purpose is narrower, more specific, and more precise."[117]  Thus, "[w]hen goods are acquired for the *ordinary purposes* for which such goods are generally used, no implied warranty of fitness for a *particular purpose* arises.  A use for ordinary purposes falls within the concept of merchantability."[118]  The comments to K.S.A. § 84-2-315 provide the following guidance as to this element of an implied warranty of fitness for a particular purpose:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.[119]

---

[113] K.S.A. § 84-2-315; *Golden v. Den-Mat Corp.*, 276 P.3d 773, 799 (Kan. Ct. App. 2012); *CB Lodging, LLC v. i3tel, LLC*, No. 08-2310-JAR, 2008 WL 4717092, at *3 (D. Kan. Oct. 20, 2008).

[114] K.S.A. § 84-2-315, cmt. 1; *see CB Lodging*, 2008 WL 4717092, at *3.

[115] *E.g.*, *Smith v. Stewart*, 667 P.2d 358, 361–62 (Kan. 1983) (citations omitted).

[116] *Int'l Petroleum Servs., Inc. v. S & N Well Serv., Inc.*, 639 P.2d 29, 37 (Kan. 1982).

[117] *Id.*

[118] *Stover v. Eagle Prod., Inc.*, 896 F. Supp. 1085, 1091 (D. Kan. 1995) (citing *Smith v. Stewart*, 667 P.2d 358, 362 (Kan. 1983)) (emphasis in original).

[119] K.S.A. § 84-2-315, cmt. 2.

Thus, for an implied warranty of fitness for a particular purpose to arise, the goods must be used for a particular purpose, and the seller must have reason to know of the buyer's particular purpose for the goods.[120]

Defendant argues that Plaintiffs have alleged no facts to show decedent's intended use of the equipment was any different from the use of the equipment by other customers. The ordinary purpose of a home security system is monitoring home security. Plaintiffs have alleged no facts to support a finding that decedent intended to use the equipment in any particular way outside of its ordinary use, namely, home monitoring. Accordingly, Plaintiffs claim for implied warranty of fitness for a particular purpose is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 9) is **granted**.

**IT IS SO ORDERED.**

Dated: November 19, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[120] *Danaher v. Wild Oats Mkts., Inc.*, No. 08-2293-DJW, 2011 WL 2969314, at *4 (D. Kan. July 20, 2011).